A09A1530. ARBEGAST v. THE STATE.
(688 SE2d 1)

DOYLE, Judge.

Steven Jesse Arbegast was charged with two counts of child molestation[1] and two counts of enticing a child for indecent purposes.[2] He filed a motion to dismiss the indictment and a plea in bar, claiming a violation of his constitutional right to a speedy trial. The trial court denied the motion, and Arbegast appeals, contending that a delay of five years and two months deprived him of a fair trial. For the following reasons, we affirm.

The record shows that Arbegast was arrested on September 26, 2003. He was subsequently released on bond on November 4, 2003. The indictment, which charged him with committing two counts of child molestation and two counts of enticing a child for indecent purposes on August 8, 2003, was returned on November 21, 2003. Thereafter, the case appeared on the following calendars: March 26, 2004; May 13, 2004; June 7, 2004; October 19, 2006; and January 9, 2009.

Arbegast was arrested on March 25, 2008, for driving with a suspended license, and he was taken into custody. On April 1, 2008, the State filed a motion to revoke his bond based on the following arrests: April 2005, for failure to appear; October 2006, for a probation violation; two separate times in February 2007, for driving with a suspended or revoked license; June 2007, for simple battery and simple assault; and November 2007 and March 2008, for driving with a suspended or revoked license. The trial court granted the

---

[1] OCGA § 16-6-4 (a) (1).
[2] OCGA § 16-6-5 (a).

motion on April 9, 2008, and Arbegast remained in jail thereafter.

On January 30, 2009, Arbegast filed his motion to dismiss and plea in bar, alleging a violation of his constitutional right to a speedy trial. Following a hearing, the trial court denied the motion in an order entered on February 9, 2009. This appeal followed.

"The Sixth Amendment to the United States Constitution and Art. I, Sec. I, Par. XI (a) of the 1983 Georgia Constitution guarantee an accused the right to a speedy trial, which attaches at the time of arrest or when formal charges are brought, whichever is earlier."[3]

> The template for deciding all constitutional speedy trial claims under the Sixth Amendment and the Georgia Constitution is laid out in the 1972 case of *Barker v. Wingo*[4] and the 1992 decision in *Doggett v. United States.* . . .[5] The analysis has two stages. First, the court must determine whether the interval from the accused's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered "presumptively prejudicial." If not, the speedy trial claim fails at the threshold. If, however, the delay has passed the point of presumptive prejudice, the court must proceed to the second step of the *Barker-Doggett* analysis, which requires the application of a delicate, context-sensitive, four-factor balancing test to determine whether the accused has been deprived of the right to a speedy trial.[6]

1. *Presumptive Prejudice.* Here, approximately 64 months passed between Arbegast's September 26, 2003 arrest and the February 9, 2009 order denying his motion to dismiss. Thus, as conceded by the State and determined by the trial court,[7] the delay was presumptively prejudicial.[8] Accordingly, we must apply the *Barker-Doggett* balancing test.

2. *Barker-Doggett Balancing Test.* The four factors that must be considered during the second stage of the speedy trial analysis are: "(1) the length of the delay; (2) the reason for the delay and whether

---

[3] *Robinson v. State*, 298 Ga. App. 164, 166 (1) (679 SE2d 383) (2009).

[4] 407 U. S. 514, 530 (IV) (92 SC 2182, 33 LE2d 101) (1972).

[5] 505 U. S. 647, 651 (II) (112 SC 2686, 120 LE2d 520) (1992).

[6] (Footnotes omitted.) *Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008).

[7] The trial court erroneously excluded the time it took to decide Arbegast's motion to dismiss the indictment for an alleged speedy trial violation when calculating the length of the delay in this case. See id. at 55 (2); *Hayes v. State*, 298 Ga. App. 338, 339-340 (1) (680 SE2d 182) (2009). The ten-day discrepancy does not, however, substantially alter our review.

[8] See *Herndon v. State*, 277 Ga. App. 374, 376 (1) (626 SE2d 579) (2006) (a delay of more than one year raises a threshold presumption of prejudice to the defendant).

this is attributable to the defendant or the state; (3) the timeliness of the defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant."[9]

(a) *Length of the delay.* At the outset, we note that although the trial court properly concluded that the delay in this case was sufficient to require an analysis of Arbegast's speedy trial claim, it does not appear from our reading of the order that the court weighed the length of the delay in conducting that analysis.

> It is important that trial courts not limit their consideration of the lengthiness of the pretrial delay to the threshold question of presumptive prejudice and remember to count it again as one of four criteria to be weighed in the balancing process at the second stage of the *Barker-Doggett* analysis. As the Supreme Court has explained, "[t]his latter enquiry is significant to the speedy trial analysis because . . . the presumption that pretrial delay has prejudiced the accused intensifies over time."[10] The uncommon length of the pretrial delay thus merits consideration beyond its use as a liminal screening mechanism.[11]

Thus, to the extent the trial court failed to consider this factor in the *Barker-Doggett* balancing test, it erred.[12]

Here, the more than five-year delay "far exceeds the one-year benchmark for presumptive prejudice."[13] Indeed, the Supreme Court has characterized lesser delays as "egregious"[14] and "deplorable."[15] This factor weighs against the State.[16] We note, however, that Arbegast's failure to assert his right "will make it difficult for [him] to prove that he was denied a speedy trial."[17]

(b) *Reasons and responsibility for the delay.* In this case, the trial court cited several reasons for the delay:

> [T]he majority of the delay was the result of the two sides attempting to reach a non-trial resolution of the case. The

---

[9] (Punctuation omitted.) *State v. Johnson*, 274 Ga. 511, 512 (555 SE2d 710) (2001). See also *Doggett*, 505 U. S. at 651 (II); *Barker*, 407 U. S. at 530 (IV).

[10] *Doggett*, supra, 505 U. S. at 652; see *Boseman v. State*, 263 Ga. 730, 732 (438 SE2d 626) (1994).

[11] *Ruffin*, 284 Ga. at 56-57 (2) (b) (i); see also *Hayes*, 298 Ga. App. at 340-341 (2) (a).

[12] See *Ruffin*, 284 Ga. at 59 (2) (b) (i).

[13] Id. at 58 (2) (b) (i).

[14] See *Nelloms v. State*, 274 Ga. 179, 180 (549 SE2d 381) (2001) (51-month delay).

[15] See *Perry v. Mitchell*, 253 Ga. 593, 594 (322 SE2d 273) (1984) (27-month delay).

[16] See *Ruffin*, 284 Ga. at 58 (2) (b) (i).

[17] *Barker*, 407 U. S. at 532 (IV).

> State and defense requested the case be removed from the [c]ourt's calendars. . . . A significant delay was the result of the Defendant's chosen counsel's illness.[18] Some delay resulted from three changes in the prosecutor assigned to the case.

The trial court did not, however, state whether it ultimately weighed this factor against the State or Arbegast.

At the motion to dismiss hearing, defense counsel asserted that the trial calendars for this trial court were comprised of those cases that the prosecutor had included on a list that it gave to the trial court's clerk, and thus, the State essentially controlled the trial calendar; the State did not contest this characterization of the trial court's procedure for preparing trial calendars. Instead, the State explained that it engaged in active plea negotiations with defense counsel and that it spent time investigating Arbegast and his history, including possible similar transactions. The prosecutor did concede, however, that it "[had] to bear part of the responsibility for the delay," citing other cases that the State tried during the period of delay.

Thus, it appears that both parties share some responsibility for the delay, including a brief period of time in 2005 and 2006 when defense counsel was ill. A majority of the delay, however, is attributable to the State, which failed to submit the case to the calendar clerk for placement on the trial calendar. As the Supreme Court has explained:

> Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him. . . .
>
> Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such

---

[18] Arbegast's initial attorney became seriously ill at some point in late 2005 or early 2006, and a subsequent attorney filed a notice of appearance in the case on March 22, 2006.

> negligence varies inversely with its protractedness. . . . Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.[19]

Under the circumstances of this case, we conclude that the reason for the delay factor should be weighed against the State.[20]

(c) *Timeliness of Arbegast's assertion of his right to a speedy trial.* "Because a defendant may benefit by delaying a trial, this [c]ourt has recognized that a defendant has a responsibility to assert his right to a speedy trial."[21] As the Supreme Court has stated,

> the failure to assert the right is entitled to strong evidentiary weight against the defendant, where, as here, [Arbegast] filed no statutory demand for speedy trial pursuant to OCGA § 17-7-171 and did not raise his constitutional right to a speedy trial for the [64] months between his arrest and the filing of his motion to dismiss, in which he finally asserted the right. This delay in asserting the right to a speedy trial must be weighted against [Arbegast].[22]

(d) *Prejudice.* "[C]onsideration of prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim."[23]

> Under *Doggett*, a substantial delay gives rise to a presumption of actual prejudice, because greater pretrial delays simultaneously increase the degree of prejudice presumed and decrease the expectation that the defendant can demonstrate tangible prejudice to his or her ability to present a defense.[24]

---

[19] *Ruffin*, 284 Ga. at 60 (2) (b) (ii), quoting *Doggett*, 505 U. S. at 656-657.

[20] See id.

[21] (Punctuation omitted.) *Hester v. State*, 268 Ga. App. 94, 98 (3) (601 SE2d 456) (2004).

[22] (Punctuation omitted.) *Brannen v. State*, 274 Ga. 454, 456 (553 SE2d 813) (2001).

[23] *Doggett*, 505 U. S. at 655 (III) (A).

[24] (Citations omitted.) *Hayes*, 298 Ga. App. at 347-348 (2) (d), quoting *Williams v. State*,

The Supreme Court has concluded that a delay exceeding five years entitles a defendant to a presumption of actual prejudice.[25]

Here, however, the State has rebutted this presumption by showing that Arbegast waited more than five years to assert his right to a speedy trial.[26] Thus, Arbegast was required to demonstrate that he suffered actual prejudice as a result of the delay.

There are three factors to consider in determining whether a defendant suffered prejudice as a result of delay: "whether there has been oppressive pre-trial incarceration; the anxiety and concern of the accused; and the possibility of harm to the accused's defense."[27] Arbegast argues that he has been incarcerated since April 9, 2008, and that the pending charges "caused problems with him being able to work" and to subsequently fund his defense. He also alleges that he intended to call his mother as a witness to discredit the victim in a similar transaction,[28] but she had become ill during the delay in bringing the case to trial and would be unable to travel to Georgia to testify. Arbegast also argued that the similar transaction victim tested positive for herpes, and that he was unable to produce medical records that would show that Arbegast did not have herpes.

The trial court concluded that Arbegast failed to demonstrate actual prejudice resulting from the delay. We agree with this conclusion. Even assuming that Arbegast's extended incarceration following the revocation of his bond was a result of the delay in bringing him to trial,[29] he has not "demonstrated any specific anxiety or concern which would balance this factor in [his] favor."[30]

Pretermitting whether Arbegast has shown that his defense would be negatively affected by his mother's failure to testify regarding the similar transaction, he has not demonstrated that his

---

277 Ga. 598, 601 (1) (d) (592 SE2d 848) (2004).

[25] See, e.g., *State v. White*, 282 Ga. 859, 863 (2) (d) (655 SE2d 575) (2008) (five-and-one-half year delay raises presumption of actual prejudice); *Williams v. State*, 277 Ga. at 600-601 (1) (d) (five-year delay); *State v. Redding*, 274 Ga. 831, 833 (561 SE2d 79) (2002) (delay of sixty-seven months); *State v. Sutton*, 273 Ga. App. 84, 87-88 (614 SE2d 206) (2005) (seven-year delay).

[26] See *Harris v. State*, 284 Ga. 455 (667 SE2d 361) (2008); *Hayes*, 298 Ga. App. at 347 (2) (d); *Kramer v. State*, 287 Ga. App. 796, 799 (1) (652 SE2d 843) (2007).

[27] (Punctuation omitted.) *Harris*, 284 Ga. at 456.

[28] The trial court previously granted the State's motion to present evidence that Arbegast anally sodomized a kindergarten neighbor approximately 15 years prior to the incidents giving rise to the instant charges. At the motion to dismiss hearing, defense counsel stated that Arbegast's mother would testify that the child victim was comfortable visiting her home after he claimed that Arbegast sexually assaulted him.

[29] As previously noted, Arbegast was released on bond following his arrest, but his bond was revoked (resulting in his extended pretrial incarceration) as a result of numerous arrests unrelated to this case.

[30] (Punctuation omitted.) *Brannen*, 274 Ga. at 457.

mother is unavailable to testify.

> Generally, a witness is unavailable only when the witness has died, has invoked a privilege, or has not been located after a diligent search. The determination as to the inaccessibility of a witness . . . is within the sound discretion of the trial court and will not be disturbed unless a manifest abuse of discretion is shown.[31]

Here, Arbegast's only support for his claim that his mother was unavailable is trial counsel's statement at the hearing that counsel asked the mother's husband whether a doctor had concluded that she was unable to travel, and the husband replied, "Well, I don't want her to travel, I don't think she can." Under these circumstances, we cannot conclude the trial court abused its discretion in rejecting this argument.

With regard to Arbegast's medical records, trial counsel indicated that the similar transaction victim obtained a prescription for a herpes medication in 1989 and that counsel had spoken to someone in a clinic who provided a document indicating that Arbegast did not have herpes. Notably, trial counsel did not indicate the date of the medical records, nor did he allege that it coincided with the victim's prescription. Morever, Arbegast failed to show that the delay in the trial resulted in his inability to obtain the records, offering only trial counsel's statement that he was "unable to produce that evidence either because of the time involved and also because — well, I don't know why." Under these circumstances, Arbegast has not demonstrated an abuse of the trial court's discretion based on a lack of actual prejudice to his defense.

(e) *Balancing the factors*. Our deference to the trial court's denial of Arbegast's motion to dismiss is somewhat diminished by the trial court's misapplication of the law.[32] "Nevertheless, despite the trial court errors noted above, we conclude that the trial court's denial of [Arbegast's] constitutional speedy trial claim should be affirmed. . . ."[33]

After balancing the egregious delay in bringing Arbegast to trial with the dilatory assertion of his right to a speedy trial and his failure to demonstrate actual prejudice to his defense, we conclude that the trial court did not abuse its discretion in denying Arbegast's

---

[31] (Punctuation and footnote omitted.) *Brannen v. State*, 262 Ga. App. 719, 721 (586 SE2d 383) (2003).

[32] See *Williams*, 277 Ga. at 601 (1) (e).

[33] Id.

motion to dismiss.[34]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED SEPTEMBER 28, 2009 —
RECONSIDERATION DENIED DECEMBER 9, 2009 — ▮▮▮▮▮▮▮▮▮

*Frank C. Winn,* for appellant.
*David McDade, District Attorney, Nedal S. Shawkat, Assistant District Attorney,* for appellee.

---

[34] See *Barker,* 407 U. S. at 536 (V); *Harris,* 284 Ga. at 457; *Williams,* 277 Ga. at 599-601 (1).