### A09A1284. THE STATE v. MOSES.
(692 SE2d 1)

ADAMS, Judge.

According to the trial court's order and insofar as we can ascertain from the incomplete record before us,[1] it appears that appellee Dante Moses was arrested sometime around December 9, 2004 for the offenses of armed robbery, aggravated assault with intent to rob, possession of a firearm during the commission of a felony and possession of a firearm by a convicted felon; he was indicted for those offenses on or about December 21, 2004.[2]

Moses' case was called for trial on June 12, 2006,[3] but dismissed for "want of prosecution" because the State declared it was not ready to proceed. Moses was re-indicted on June 30, 2006 and subsequently

---

[1] We have been somewhat hampered in our consideration of this appeal by an incomplete record and further hampered by the fact that the State's brief and Moses' brief differ as to certain dates. Moreover, the State has inconsistently recited several key dates in its brief, which we ordered it to recast and refile in hopes of resolving these discrepancies. However, since none of these discrepancies has materially affected our consideration of this appeal, we have strived to decide this case on the merits instead of dismissing it.

[2] We note again that we cannot state with certainty that Moses was arrested on this date. Although an arrest warrant appears in the record with this date, other documents indicate that Moses' co-defendant was arrested then but at that time Moses remained at large. Because it does appear that Moses was indicted in December 2004 within a few weeks of the stated arrest date, the lack of clarity as to his arrest date does not substantially alter our analysis. *Williams v. State*, 277 Ga. 598, 599 (1) (a) (592 SE2d 848) (2004).

[3] The State says in its amended brief that the case was called for trial on June 30. Both the trial court's order and Moses' brief give that date as June 12.

re-arrested on August 12, 2006. He was released on bond September 11 or 12, 2006. A "Complex Criminal Case Management Order" was filed on September 13, 2006.

On November 14, 2008 Moses filed a motion to dismiss the indictment, asserting that his constitutional right to a speedy trial had been violated. In this motion, he asserted a demand for trial, noting that his case had not yet been placed on a trial calendar. Following a hearing, the trial court granted the motion on January 8, 2009, and the State timely filed the present appeal.

We review the trial court's order granting the motion to dismiss the indictment under an abuse of discretion standard. On appeal, "[t]he question is whether the trial court abused its discretion in ruling that [Moses'] speedy trial rights were violated." *State v. Redding*, 274 Ga. 831, 832 (561 SE2d 79) (2002). " 'However, where, as in this case, the trial court has clearly erred in some of its findings of fact and/or has misapplied the law to some degree, the deference owed the trial court's ultimate ruling is diminished.' *Williams v. State*, [277 Ga. 598, 601 (1) (e) (592 SE2d 848) (2004)]." *Hester v. State*, 268 Ga. App. 94, 96 (601 SE2d 456) (2004).

> The template for deciding all constitutional speedy trial claims under the Sixth Amendment and the Georgia Constitution is laid out in the 1972 case of *Barker v. Wingo*, [407 U. S. 514, 530 (IV) (92 SC 2182, 33 LE2d 101) (1972)] and the 1992 decision in *Doggett v. United States*, [505 U. S. 647, 651 (II) (112 SC 2686, 120 LE2d 520) (1992)]. . . . The analysis has two stages. First, the court must determine whether the interval from the accused's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered "presumptively prejudicial." If not, the speedy trial claim fails at the threshold. If, however, the delay has passed the point of presumptive prejudice, the court must proceed to the second step of the *Barker-Doggett* analysis, which requires the application of a delicate, context-sensitive, four-factor balancing test to determine whether the accused has been deprived of the right to a speedy trial.

*Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008).

1. *Presumptive Prejudice.* Here, the time between the earlier of the date of the original arrest or the date of the original indictment and the January 8, 2009 order granting Moses' motion to dismiss

slightly exceeded four years.[4] This delay was presumptively prejudicial, as conceded by the State, thus triggering the analysis under the *Barker-Doggett* balancing test. See, e.g., *Brannen v. State*, 274 Ga. 454, 455 (553 SE2d 813) (2001) (noting previous cases that found a fifty-one-month delay "egregious" and a delay of more than two years "deplorable"); *State v. Giddens*, 280 Ga. App. 586, 587 (634 SE2d 526) (2006) (delay of more than eight months usually considered presumptively prejudicial).

2. *Barker-Doggett Balancing Test.* The four factors that must be considered during the second stage of a constitutional speedy trial analysis are: "(i) whether [the] delay before trial was uncommonly long, (ii) whether the government or the [accused] is more to blame for that delay, (iii) whether, in due course, the [accused] asserted the right to a speedy trial, and (iv) whether he . . . suffered prejudice as the delay's result." (Punctuation omitted.) *Ruffin*, 284 Ga. at 56 (2) (b). *State v. Johnson*, 274 Ga. 511, 512 (555 SE2d 710) (2001); *Hayes v. State*, 298 Ga. App. 338, 340 (2) (680 SE2d 182) (2009).

> No one of these factors, standing alone, is either a necessary or sufficient condition to a finding of a deprivation of the right to a speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. Thus, the second stage of the constitutional speedy trial analysis requires courts to engage in a difficult and sensitive balancing process and necessarily compels them to approach speedy trial cases on an ad hoc basis.

(Citation and punctuation omitted.) *Hayes*, 298 Ga. App. at 340 (2).

(a) *Length of the Delay.* Although the trial court properly found the length of the delay to be presumptively prejudicial, and therefore sufficient to trigger consideration of the *Barker-Doggett* factors, it failed to also weigh the length of the delay in conducting that analysis.

> It is important that trial courts not limit their consideration of the lengthiness of the pretrial delay to the threshold question of presumptive prejudice and remember to count it again as one of four criteria to be weighed in the balancing process at the second stage of the *Barker-Doggett* analysis. *Ruffin*, 284 Ga. at 56-57 (2) (b) (i). This is because uncom-

---

[4] Because the period between the dismissal of the original charges for want of prosecution and Moses' reindictment was not a significant amount of time, we need not consider whether this time period should be omitted from our calculation.

YALE LAW LIBRARY

> monly long delays have a "tendency to compromise the reliability of trials in ways that neither party can prove, or for that matter, identify." . . . [*Ruffin*, 284 Ga.] at 56 (2) (b) (i). As a result, the weight accorded the other facts in the balancing test depends, to a large degree, on the length of the delay. See, e.g., *Doggett*, supra, 505 U. S. at 657 (III) (B) (even where the delay in prosecution results from governmental negligence, "our toleration of such negligence varies inversely with its protractedness") . . . *Ruffin*, supra, 284 Ga. at 57 (2) (b) (i) (the longer the delay, the stronger the presumption that it has prejudiced the accused).

*Hayes*, 298 Ga. App. at 341 (2) (a).

In this case, the slightly more than four-year delay far exceeds the one-year benchmark for presumptive prejudice; therefore this factor is weighed against the State. *Ruffin*, 284 Ga. at 58 (2) (b) (i); *Robinson v. State*, 298 Ga. App. 164, 167 (1) (b) (i) (679 SE2d 383) (2009).

(b) *Whether the Government or the Accused is More to Blame for the Delay.* The second factor in the *Barker-Doggett* analysis requires the court to examine both the reason for the delay and whether this is attributable to the defendant or to the State. *Johnson*, 274 Ga. at 512. Here the trial court found, and the State concedes, that the responsibility for the delay in his case belonged to the government. Thus, analysis of this factor turns on the State's reasons for the delay and how heavily those reasons should weigh against the State.

As stated above, the total delay here was slightly in excess of 48 months from the time of the first arrest/indictment to the time the trial court granted Moses' motion to dismiss. When the case was first placed on a trial calendar after approximately 17-18 months, Moses appeared and announced ready for trial. But the case was dismissed for want of prosecution after the State announced it was unprepared to try the case because the assigned prosecutor was no longer employed by the district attorney's office. The case continued to go untried in the ensuing months as it apparently continued to be assigned to different assistant district attorneys; further, both the trial court and the prosecution attributed the delay to an over-crowded docket. As we recently noted, echoing both our Supreme Court and the United States Supreme Court:

> Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply

because the accused cannot demonstrate exactly how it has prejudiced him. . . .

Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness. . . . Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it. [*Ruffin*, 284 Ga. at 60 (2) (b) (ii), quoting *Doggett*, 505 U. S. at 656-657.]

*Arbegast v. State*, 301 Ga. App. 462, 465 (2) (b) (688 SE2d 1) (2009). This factor is thus also weighed against the State.

(c) *Timeliness of the Assertion of the Right to a Speedy Trial*. "Because a defendant may benefit by delaying a trial, this Court has recognized that a defendant has a responsibility to assert his right to a speedy trial." (Punctuation omitted.) *Hester*, 268 Ga. App. at 98 (3). But an

accused is not required to demand a speedy trial at the first available opportunity, for the Supreme Court has expressly rejected the demand-waiver approach to the constitutional speedy trial right. *Ruffin*, 284 Ga. at 62 (2) (b) (iii) (analyzing the *Barker-Doggett* factor, in part, by balancing time it took defendant to assert right to a speedy trial against time it took trial court to decide whether right had been violated).

*Hayes*, 298 Ga. App. at 345-346 (2) (c). The relevant inquiry is thus whether the right has been asserted in "due course." *Ruffin*, 284 Ga. 62-63 (2) (b) (iii).

The trial court in this case found that Moses first asserted his right to a speedy trial when he appeared and announced ready for

trial in June 2006. But our Supreme Court has previously held that a defendant must specifically assert his Sixth Amendment right to a speedy trial, which Moses did not do until he filed his motion to dismiss. *Brannen*, 274 Ga. at 454 (objection to a continuance and announcing ready for trial cannot be construed as an assertion of the right to speedy trial under the Sixth Amendment). Thus it appears that the trial court misapplied the law to the extent it found that Moses sufficiently asserted his right when he announced ready for trial in June 2006.

Although the approximately 29-month delay between the time Moses was reindicted and the time he filed his motion to dismiss and asserted his constitutional speedy trial demand puts this case in line with previous cases which have held that this factor should be weighed against the accused,[5] because mitigating circumstances also exist here we find that this factor should not be heavily weighed against Moses. We note in this regard that Moses had appeared and announced ready for trial and that the case was dismissed because the State was not ready to try it. Perhaps more importantly, Moses' case had not yet been placed on a trial calendar at the time he asserted his right.[6] Thus, this case is distinguishable from those cases in which the accused waits until trial is imminent before seeking to dismiss an indictment on Sixth Amendment grounds. *Brannen*, 274 Ga. at 456 (motion to dismiss filed five days prior to scheduled trial date); *Disharoon v. State*, 288 Ga. App. 1, 4 (1) (c) (652 SE2d 902) (2007) and cites; *Lackey v. State*, 283 Ga. App. 139, 140 (640 SE2d 717) (2006). Thus, while the trial court erred in not weighing this factor against Moses, considering the circumstances here, we find this factor should not be weighed heavily against him. See *Johnson*, 274 Ga. at 513 (3) (almost seven-year delay weighed only slightly against the accused when six years of the delay was least in part attributable to the State and accused unaware of the indictment during that time); *Jones v. State*, 283 Ga. App. 838, 841

---

[5] *Ruffin*, 284 Ga. at 63 (2) (b) (iii) (trial court found correct to weigh this factor against accused when indictment was returned April 2005 and right asserted in September 2006, but not pursued "doggedly" until December 2006); *Bowling v. State*, 285 Ga. 43, 45 (1) (c) (673 SE2d 194) (2009) (appellate court upheld trial court's finding that accused did not timely and vigilantly assert his right when accused arrested in April 2004, charges upgraded in May 2004 and right asserted in October 2006). Compare *Hayes*, 298 Ga. App. at 345 (2) (c) (four-month delay not weighed against the accused); *State v. Reid*, 298 Ga. App. 235, 239 (2) (b) (iii) (679 SE2d 802) (2009) (assertion of right weighed in favor of accused when speedy trial right asserted just two months after arrest); *State v. Allgood*, 252 Ga. App. 638, 640 (3) (556 SE2d 857) (2001) (not weighed against the accused when motion to dismiss was filed "promptly" after the case was back on the trial calendar).

[6] Again, we are hampered by an incomplete record in this case. However, in its amended brief, the State appears to acknowledge that the case had not yet been placed on a trial calendar at the time Moses filed his motion to dismiss.

(642 SE2d 865) (2007) (although accused did not assert right until almost three years after arrest, trial court erred by weighing this factor heavily against her because of mitigating circumstances); *Hester*, 268 Ga. App. at 98 (2) (trial court erred in weighing this factor heavily against the accused when the State failed to bring an indictment for three years as well as a delay in appointing counsel, who filed demand within months after being appointed).

(d) *Prejudice to the Defendant.* "[T]he issue of prejudice weighs 'most heavily in determining whether a defendant's constitutional rights have been violated.' " *Simmons v. State*, 290 Ga. App. 315, 316 (4) (659 SE2d 721) (2008). In evaluating prejudice, a court must consider the three interests protected by the speedy trial right: " '(i) preventing oppressive pretrial incarceration, (ii) minimizing anxiety and concern of the defendant, and (iii) limiting the possibility that the defense will be impaired.' . . . The third interest — impairment of the defense — is the most important component of the prejudice factor." Id. See also *Frazier v. State*, 277 Ga. App. 881, 883 (d) (627 SE2d 894) (2006).

Here the trial court found that because of the length of the delay, actual prejudice was presumed, relieving Moses of the burden of making a specific showing in regard to this factor. However,

> [t]he [forty-eight] month delay in this case falls [a full twelve months] shy of the five years we have previously held gives rise to a presumption of actual prejudice. See *Moore v. State*[, 294 Ga. App. 570, 574 (1) (d) (669 SE2d 498) (2008)] (the "category of cases that presumes actual prejudice . . . generally includes only those cases where the delay is five years or longer").

*Hayes*, 290 Ga. App. at 348 (2) (d). But, as further noted in *Hayes*,

> [g]iven that the *Barker-Doggett* analysis is a balancing test, . . . requiring the trial court to analyze each case based upon its own unique facts, it necessarily forbids the application of any "bright-line" rules. Thus, the fact that the delay in this case was less than five years does not automatically foreclose a presumption of actual prejudice. *Rather, in determining whether a pre-trial delay gives rise to a presumption of actual prejudice, the trial court must examine the delay relative to all other factors, including the complexity of the case and the evidence existing on the date the State initiated the prosecution.*

(Emphasis supplied.) *Hayes*, 298 Ga. App. at 348 (2) (d).

In this case, the underlying crime was a "street" armed robbery, the crime was reported to police immediately and statements were taken from the victim and apparently a witness. The suspects were also immediately identified both by name and from a photographic lineup, and arrests were quickly made. It appears, therefore, that the investigation was mostly completed by the time indictments were returned several weeks after the crime was committed. But, even so, when the case was first placed on a trial calendar approximately 17 months after the first indictment, the State was unprepared to try the case because of personnel changes. And while it appears that a trial would not be complicated or prolonged, the case apparently was still languishing at the time that Moses asserted his constitutional speedy trial rights. Thus, although the trial court erred by finding that the length of the delay alone resulted in a presumption of actual prejudice to Moses, the fact of the 48-month delay coupled with the other circumstances such as those set forth above, could support such a finding. See *Hayes*, 298 Ga. App. at 349 (2) (d).

However, in addition to presumptive actual prejudice the trial court also found that Moses made a sufficient showing of prejudice — specifically that his defense will be hampered in that any possible alibi witnesses[7] will be deemed less credible by a jury because they will assume memory issues due to the four years of delay. Although a generalized statement that the memories of witnesses have faded over time is not deemed sufficient, memory lapses that substantially relate to a material issue are deemed prejudicial. *Robinson*, 298 Ga. App. at 168 (1) (b) (iv). "Also the presumption of prejudice addressed in *Barker* strengthens with the passage of time and, as the delay increases, less specific harm need be demonstrated to conclude that the delay is prejudicial." *Redding*, 274 Ga. at 834.

3. *Balancing of the Four Factors.* Although the trial court here erred in several respects in its analysis under the *Barker-Doggett* test, we find these errors would cause only a slight shift in balancing the factors, since it does not appear that any of the factors weighed heavily against either the State or Moses. Thus, while the trial court's analysis was somewhat flawed and therefore our deference to the trial court diminished, we nevertheless conclude that the State failed to show that the trial court abused its discretion by granting Moses' motion to dismiss the indictment on constitutional speedy trial grounds. See, e.g., *Williams*, 277 Ga. at 601 (1) (e); *Redding*, 274 Ga. at 834.

*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

---

[7] Moses indicated at the hearing on his motion to dismiss that his intent was to call alibi witnesses to establish his whereabouts at the time the crime was committed.

Decided November 17, 2009.

*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellant.

*Marilyn Primovic, Ashleigh B. Merchant*, for appellee.